# In the United States Court of Federal Claims

No. 14-1248C

(Filed: June 19, 2018)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| **ENTERGY NUCLEAR** | ) | Claimed partial breach of contract for |
| **GENERATION COMPANY,** | ) | disposal of spent nuclear fuel; uncontested |
| | ) | liability for certain damages; |
| **Plaintiff,** | ) | inappropriateness of judgment under Rule |
| | ) | 54(b); disputed causation for damages |
| **v.** | ) | based on NRC fee change in 1999 |
| | ) | |
| **UNITED STATES,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |
| | ) | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

L. Jager Smith, Jr., Jager Smith, LLC, Jackson, Mississippi, for plaintiff.  Of counsel were Alex D. Tomaszczuk, Jay E. Silberg, and Clare Cavaliero Pincoski, Pillsbury Winthrop Shaw Pittman LLP, Washington, D.C., and Sam O. Morris, Jackson, Mississippi.

Kristin McGrory, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant.  With her on the briefs were Chad A. Readler, Acting Assistant Attorney General, Civil Division, and Robert E. Kirschman, Jr., Director, and Lisa L. Donahue, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington D.C.  Of counsel were Jane K. Taylor, Office of the General Counsel, United States Department of Energy, and Alexis Echols, Adam Lyons, and Kelly Krystyniak, Trial Attorneys, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C.

## OPINION AND ORDER

LETTOW, Judge.

Plaintiff, Entergy Nuclear Generation Company ("Entergy"), is once again before this court seeking damages for the government's partial breach of a contract for disposal of spent nuclear fuel generated at Entergy's Pilgrim Nuclear Power Station in Plymouth, Massachusetts. This opinion is merely another chapter in the long history of both the litigation between these parties (and Entergy's predecessor in privity, the Boston Edison Company)[1] and the tortured

---

[1] *See Boston Edison Co. v. United States*, 64 Fed. Cl. 167 (2005) ("*Boston Edison I*"); *Boston Edison Co. v. United States*, 67 Fed. Cl. 63 (2005) ("*Boston Edison II*"); *Boston Edison Co. v. United States*, 80 Fed. Cl. 468 (2008) ("*Boston Edison III*"), *appeal dismissed and*

relationship between the Department of Energy ("DOE") and the demands of the Nuclear Waste Policy Act of 1982, Pub. L. No. 97-425, 96 Stat. 2201 (codified in relevant part at 42 U.S.C. § 10222).[2]  Because that history has already been thoroughly documented, only its relevant aspects are restated here.

The Boston Edison Company entered into a contract with DOE in 1983 for the disposal of the spent nuclear fuel generated at its Pilgrim Nuclear Power Station.  DOE breached the contract by not commencing disposal of the Pilgrim plant's spent nuclear fuel by January 31, 1998.  Boston Edison sold the Pilgrim plant to Entergy in July 1999, assigning Entergy the DOE contract.  Boston Edison relied on the breach to assert a claim for diminution in value on the sale of Pilgrim to Entergy, and Entergy sued DOE to recoup the additional costs it incurred in operating the plant due to the breach.  Boston Edison's claim was deemed to be premature, *see Boston Edison VI*, 658 F.3d at 1367, but Entergy was awarded damages in 2012 for costs incurred through December 31, 2008, *see Entergy Nuclear*, 130 Fed. Cl. at 469-70 (relating the affirmance by the Federal Circuit of most of the damages awarded to Entergy and describing the subsequent stipulation between Entergy and the government with respect to a remanded issue of damages).

Entergy now returns to court seeking to recover $66,286,540 in damages allegedly incurred between December 31, 2008 and June 30, 2015.  Pending before the court are the parties' cross-motions for partial summary judgment under Rule 56 of the Court of Federal Claims ("RCFC") and Entergy's motion for partial final judgment under RCFC 54(b).  These are pre-trial cross-motions; trial is scheduled to occur October 1 through 12, 2018.

---

*remanded*, *Boston Edison Co. v. United States*, 299 Fed. Appx. 956 (Fed. Cir. 2008) ("*Boston Edison IV*"); *Boston Edison Co. v. United States*, 93 Fed. Cl. 105 (2010) ("*Boston Edison V*"), *aff'd in part, rev'd in part, and remanded*, *Boston Edison Co. v. United States*, 658 F.3d 1361 (Fed. Cir. 2011) ("*Boston Edison VI*"); *Boston Edison Co. v. United States*, 106 Fed. Cl. 330 (2012) ("*Boston Edison VII*"), *appeal dismissed*, No. 13-5053 (Fed. Cir. Mar. 15, 2013); *Entergy Nuclear Generation Company v. United States*, 130 Fed. Cl. 466 (2017).

[2]*See Indiana Mich. Power Co. v. Department of Energy*, 88 F.3d 1272, 1277 (D.C. Cir. 1996) (holding that the United States was obligated to meet the demands of the statue according to the statutorily mandated timeline); *Northern States Power Co. v. United States Dep't of Energy*, 128 F.3d 754, 761 (D.C. Cir. 1997) (granting a petition for writ of mandamus because the government "ha[d] not abided by [the] prior conclusion [in *Indiana Michigan Power*]"); *Nebraska Pub. Power Dist. v. United States*, 590 F.3d 1357, 1376 (Fed. Cir. 2010) (en banc) (rejecting a challenge to the D.C. Circuit's jurisdiction in *Northern States*); *Entergy Nuclear FitzPatrick, LLC v. United States*, 711 F.3d 1382, 1389 (Fed. Cir. 2013) (holding that the government was precluded from evading its obligations under the statute by claiming "unavoidable delays"); *see also Boston Edison VI*, 658 F.3d at 1364 ("The government has breached similar contractual undertakings nationwide, leading to numerous breach of contract actions.").

# BACKGROUND[3]

Under the Nuclear Waste Policy Act of 1982, Congress authorized DOE "to enter into contracts with any person who generates or holds title to . . . spent nuclear fuel . . . for the acceptance of title, subsequent transportation, and disposal of such . . . spent fuel." 42 U.S.C. § 10222(a)(1).  Generators or title holders who entered into contracts with DOE have had to pay a "fee per kilogram" of spent fuel to "the Treasury of the United States." *Id.* § 10222(a)(3).  "In paying such a fee, the person delivering spent fuel . . . to the Federal Government shall have no further financial obligation to the Federal Government for the long-term storage and permanent disposal of such spent fuel . . . ." *Id.*  The statute standardizes aspects of these contracts, obligating DOE, "beginning not later than January 31, 1998, [to] dispose of the . . . spent nuclear fuel involved as provided in this subchapter." *Id.* § 10222(a)(5).

Boston Edison entered into a one of these standard contracts (the "Standard Contract") in 1983 for the disposal of the spent nuclear fuel generated at its Pilgrim plant in Plymouth, Massachusetts, and Boston Edison and then Entergy have since paid all of the required fees.  *See* Am. Compl. ¶¶ 2, 11.  Boston Edison sold the Pilgrim plant and assigned the Standard Contract to Entergy in July 1999.  Am. Compl. ¶ 4.  By this time, DOE was already in breach of the Standard Contract for failing to dispose of the spent nuclear fuel from the Pilgrim plant; DOE continues to delay fulfilling its statutory obligation and there is no indication that it will change its conduct in the foreseeable future.  *See* Am. Compl. ¶ 21; *Boston Edison VII*, 106 Fed. Cl. at 333.

Due to DOE's breach, Entergy "incur[red] substantial additional costs to provide for extended onsite storage of its [spent nuclear fuel]." Am. Compl. ¶ 23.  In its "first round" case, Entergy sought to recoup those costs and was awarded damages in 2012 for costs incurred through December 31, 2008.  Am. Compl. ¶ 2; *Boston Edison VII*, 106 Fed. Cl. at 334-35, 343.  In accord with *Indiana Mich. Power Co. v. United States*, 422 F.3d 1369, 1378 (Fed. Cir. 2005), Entergy could not recover future damages in that earlier suit, but rather it was required to bring subsequent actions after costs were incurred and before the six-year limitations period under 28 U.S.C. § 2501 had expired.  Am. Compl. ¶ 3.  Thus, Entergy returned to court in this "second round" suit.[4]

This time around, Entergy seeks to recover damages allegedly incurred between December 31, 2008 and June 30, 2015.  Am. Compl. ¶ 3.  Entergy claims damages arising from construction and maintenance costs and fees, totaling $66,286,540 during that period.  Pl.['s] . . . Mot. for Partial Summary Judgment on Undisputed Costs and for Entry of a Partial Final Judgment under Rule 54(b) ("Pl.'s Mot.") at 2-3, ECF No. 51; *see also* Pl.'s Mot. Ex. A at 3.  The government contests only a portion of that amount—$24,267,349—"as unrelated to DOE's

---

[3]The recitation of facts that follows is taken from the parties' pleadings, their cross-motions for summary judgment, the documentary materials submitted with the parties' motions, and previous opinions related to this case.

[4]Entergy submitted its complaint on December 30, 2014, and thereafter filed an amended complaint on September 29, 2015.

delay, lacking sufficient documentation, and/or unrecoverable as a matter of law" and seeks $1,000,000 in offsets.  *See* Def.'s Resp. to Pl.'s Mot. for Partial Summary Judgment and Request for Entry of a Partial Final Judgment Under Rule 54(b) ("Def.'s Opp'n") at 1-2, ECF No. 53; Pl.'s Mot. at 2.  Because the government does not contest $42,019,191 of the damages sought, Entergy seeks partial summary judgment on liability and entry of partial final judgment, both in that amount.  Pl.'s Mot. at 2-5.  The government opposes entry of partial final judgment under Rule 54(b) because, among other reasons, Rule 54(b) requires "more than one claim of relief" and the uncontested damages here "all arise from the same claim."  Def.'s Opp'n at 3 (citing RCFC 54(b)).

The government has cross-moved for partial summary judgment, contesting Entergy's claim for damages associated with fees it paid to the Nuclear Regulatory Commission ("NRC").  *See generally* Def.'s Mot. for Partial Summary Judgment ("Def.'s Mot."), ECF No. 52.  NRC is statutorily required to fund most of its annual budget through fees "collected from all licensees and certificate holders."  42 U.S.C. § 2214(c)(2).  The amount of those fees is set by the NRC via regulation.  *Id.* § 2214(c)(2).  The Pilgrim plant was licensed by the NRC's predecessor in 1972 and thus was and is subject to NRC fees.  *See* Am. Compl. ¶ 4.  Prior to 1999, under 10 C.F.R. Part 171, nuclear power plants that used wet storage facilities, like the Pilgrim plant, paid less in fees than those that used dry storage.  *See Boston Edison V*, 93 Fed. Cl. at 123-24.  But in 1999, after DOE breached "the Standard Contract, the NRC . . . modified its Part 171 fee structure to eliminate the separate fee[s] for dry and wet storage, instead making the same fee "applicable to all nuclear power . . . licensees . . . regardless of the storage option the licensee elect[ed] to use."  *Id.* at 124 (internal quotation omitted).  This increased the NRC fee assessed to Entergy.  *See id.*; Pl.['s] . . . Resp. in Opp'n to Def.'s Mot. for Partial Summary Judgment on NRC Fees ("Pl's Opp'n") at 2-3, ECF No. 54.  Entergy claims that this increase was caused by DOE's partial breach of the Standard Contract and that it is thus entitled to damages.  *Id.* at 1-2.  The government argues that the Federal Circuit's decision in *Consolidated Edison Co. of N.Y. v. United States*, 676 F.3d 1331 (Fed. Cir. 2012) forecloses the possibility of proving causation as a matter of law.  Def.'s Mot. at 2-3.  Entergy opposes the government's motion both on the grounds that this court has previously determined the causation question in its favor in *Boston Edison V* and that Entergy will offer evidence different from that considered in *Consolidated Edison*.  Pl.'s Opp'n at 2-3, 5-6.

Both of these issues have been fully briefed and argued and are ready for disposition.

## STANDARDS FOR DECISION

A grant of summary judgment is appropriate if the evidentiary materials filed in a case reveal that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  RCFC 56(a).  A material fact is one "that might affect the outcome of the suit."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A genuine dispute exists when the finder of fact may reasonably resolve the dispute in favor of either party.  *Id.* at 250.

The moving party bears the burden of demonstrating the absence of any genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  And, "the inferences to be

4

drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986) (alteration in original) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)). To establish "that a fact cannot be or is genuinely disputed," a party must "cite[] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials." RCFC 56(c)(1)(A). If the record taken as a whole "could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial'" and summary judgment is appropriate. *Matsushita*, 475 U.S. at 587 (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

The same standard applies when the parties have cross-moved for summary judgment. *See Marriott Int'l Resorts, L.P. v. United States*, 586 F.3d 962, 968-69 (Fed. Cir. 2009). "The fact that both parties have moved for summary judgment does not mean that the court must grant judgment as a matter of law for one side or the other." *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed. Cir. 1987). "Rather, the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Id.* (citations omitted).

## ANALYSIS

### I. Entry of Partial Final Judgment Under Rule 54(b)

Rule 54(b) permits the court to "direct entry of a final judgment as to one or more, but fewer than all, claims" in an action if the "action presents more than one claim for relief" and "the court expressly determines that there is no just reason for delay." RCFC 54(b). Entergy asks the court to enter partial final judgment in this case as to the $42,019,191 of undisputed costs. Pl.'s Mot. at 2, 4-5.

The text of Rule 54(b) forecloses entry of final judgment in this case. Entergy advances three claims for relief, Am. Compl. at ¶¶ 24-36 (referring to each count of the complaint as a claim for relief), but Entergy seeks to recover the $42,019,191 in undisputed costs for the "continuing breach of [DOE's] contractual obligation." *See* Pl.'s Mot. at 1-2. When applying Rule 54(b), the court must enter final judgment "as to one or more" of the claims alleged; it may not enter judgment for less than a single claim, that is, to resolve "individual issues within a claim." *Houston Indus. Inc. v. United States*, 78 F.3d 564, 567 (Fed. Cir. 1996) (citing *Liberty Mut. Ins. Co. v. Wetzel*, 424 U.S. 737, 742-43 (1997)) (internal emphasis omitted). Entergy argues that its claim of partial breach of contract is not a claim at all but a legal theory upon which it makes its claims for relief. *See* Pl.['s] . . . Reply in Support of its Mot. For Partial Summary Judgment on Undisputed Costs and for Entry of a Partial Final Judgment Under Rule 54(b) ("Pl.'s Reply") at 5 & n.3, ECF No. 57. It explains that "payment for cask purchases and storage pad construction . . . are completely separate from claims that the [g]overnment disputes, such as additional NRC fees and modifications to the reactor building crane." *Id.* at 6.

This argument contravenes the plain reading of Rule 54(b). In Rule 54(b), "claim" is best understood as "[a] demand for money, property, or a legal remedy to which one asserts a right;

. . . the part of a complaint in a civil action specifying what relief the plaintiff asks for. — Also termed *claim for relief*." *Claim*, Black's Law Dictionary (10th ed. 2014) (emphasis in original). "Claim" is used multiple times in Rule 54(b) and the same meaning should be assigned to the word each time it appears. *See* Antonin Scalia & Bryan A. Garner, *Reading Law* 170 ("A word or phrase is presumed to bear the same meaning throughout a text . . . .") (section heading) (citing *Atlantic Cleaners & Dryers, Inc. v. United States*, 286 U.S. 427, 433 (1932) ("[T]here is a natural presumption that identical words used in different parts of the same act are intended to have the same meaning.")).

Entergy's reading of Rule 54(b) would violate the principle of consistent usage. If Entergy were to have sought damages by asserting only a claim based upon a partial breach of contract, this suit would not have "present[ed] more than one claim for relief," whether or not that breach caused Entergy to incur various types of costs. As such, this suit's eligibility for Rule 54(b) consideration depends on Entergy's alleging other claims in addition to partial breach of contract. Applying the principle of consistent usage, "claim" in the clause "the court may direct entry of a final judgment as to one or more, but fewer than all, claims," must also refer to one or more of Entergy's three claims for relief. Yet Entergy has sought summary and final judgment only on its claim for partial breach of contract. Thus, to grant partial final judgment to Entergy on part but not all of the harms arising out of only its breach of contract claim would be to enter judgment on less than one claim, violating Rule 54(b).

Entergy argues that the court should focus less on the text of Rule 54(b) and more "on both the finality of the judgment and the separateness of the claims for relief." Pl.'s Reply at 6 (quoting *W.L. Gore & Assocs., Inc. v. International Med. Prosthetics Research Assocs., Inc.*, 975 F.2d 858, 862 (Fed. Cir. 1992)). Considering finality and separateness does not change the outcome here. As discussed previously, there is no "separateness" in Entergy's claim for relief; there is a single claim at issue. Further, the issues common to both the disputed and undisputed damages are at least as "intertwined" as were Boston Edison's and Entergy's claims in *Boston Edison IV*. There, the Federal Circuit remanded the case because the claims of the two parties were so intertwined that "54(b) judgment should not have been entered." 299 Fed. Appx. at 958. The Federal Circuit's reasoning is both persuasive and applicable here.

Entergy's finality argument principally relies on a single case from this court, *Entergy Nuclear Palisades, LLC v. United States*, 122 Fed. Cl. 225 (2015). *See* Pl.'s Mot. at 4-5; Pl.'s Reply at 7-8. There, the court entered a partial final judgment under Rule 54(b) for damages that were uncontested. *See Entergy Nuclear Palisades*, 122 Fed. Cl. at 229. Entergy argues that since the damages here are likewise uncontested, the court should follow suit. *See* Pl.'s Reply at 7-8. But the court in *Palisades* entered final judgment because the government *both* did not contest the damages sought *and* stated "that it w[ould] not appeal for that amount." *Entergy Nuclear Palisades*, 122 Fed. Cl. at 229 (emphasis added). The government has made no such representation here.

Because the court has not "found finality," it need not "determine whether there is any just reason for delay." *Curtiss-Wright Corp. v. General Electric Co.*, 446 U.S. 1, 8 (1980).

## II.    NRC Fees

Entergy claims it incurred $1,159,564 in NRC costs due to DOE's partial breach of the Standard Contract.  *See* Pl.'s Mot. Ex. A at 3.  To recover damages in that amount, Entergy must prove that the 1999 change in NRC's fees was caused by DOE's partial breach.  It intends to do this by presenting "documentary evidence and . . . the testimony of both Mr. Jesse Funches, the Chief Financial Officer . . . of the NRC at the time that the 1999 rule was developed and issued, and Mr. Jeffrey Merrifield, an NRC Commissioner at the time that the 1999 rule was adopted by the NRC."  Pl.'s Opp'n at 7-8.  The government argues that Entergy cannot prove causation.  It asserts that Mr. Funches' testimony "offers the same opinion that has been rejected by the Court of Federal Claims on numerous occasions."  Def.'s Mot. at 9 (citing, among other cases, *Entergy Nuclear Indian Point 2, LLC v. United States*, 128 Fed Cl. 526 (2016); *Entergy Gulf States, Inc. v. United States*, 125 Fed. Cl. 678 (2016)); *see also* Def.'s Mot. App. at 30-31 (portions of Mr. Funches' deposition testimony).  But the core of the government's argument is that much of the documentary evidence upon which Mr. Funches' testimony relies and public comments made by Mr. Merrifield were already considered and rejected as insufficient to establish causation in *Consolidated Edison*, 676 F.3d at 1339.  *See* Def.'s Mot. at 20-22; *see also Entergy La., LLC v. United States*, 133 Fed. Cl. 258, 261 (2017) ("Mr. Funches relied on a number of NRC documents to support Plaintiffs' claim that the 1999 rule change was a result of DOE's breach.  This documentary evidence was identical to that presented in *Consolidated Edison*, which . . . the Federal Circuit found insufficient to establish a direct causal link between DOE's breach and the NRC's rule change.") (internal citations omitted).  The government reads *Consolidated Edison* as dispositive of whether "the type of evidence identified by E[ntergy] . . . is insufficient as a matter of law to prove" causation, and asks this court to apply that reading here.  Def.'s Mot. at 2.

The government reads too much into *Consolidated Edison*.  The Federal Circuit's ruling on the evidentiary question was narrow.  The court held that the evidence before it—Mr. Merrifield's public comments and some documentary evidence—was insufficient to establish causation.  *Consolidated Edison*, 676 F.3d at 1339 ("These comments are insufficient as a matter of law to demonstrate that the new NRC rules were the result of the government breach.").  It did not hold that DOE's breach did not cause the change in NRC fees or that causation could not be proven, *see Alabama Power Co. v. United States*, 119 Fed. Cl. 615, 641 (2014); *Entergy Nw. v. United States*, 115 Fed. Cl. 69, 76-77 (2014), but only that the evidence before it, considered objectively, could not establish causation by a preponderance of the evidence.  The Federal Circuit's holding allows for the possibility that, with additional evidence, causation could be proved.  *See Entergy Nw.*, 115 Fed. Cl. at 77 ("[The court] is not convinced that *Consolidated Edison* inexorably dictates an entry of judgment for the government on [the NRC fees] claim.").  To survive the government's motion for summary judgment, then, Entergy need only show that it intends to present additional evidence that, when considered in the light most favorable to Entergy, would create a genuine issue of disputed fact as to whether Entergy could prove causation by a preponderance of the evidence.  *See Entergy La.*, 133 Fed. Cl. at 262 (declining to dismiss the NRC fee portion of the plaintiff's claim because plaintiff stated that it "w[ould] offer different evidence in support of its claim for NRC fees" than was offered in *Consolidated Edison*).

The evidence Entergy intends to present at trial differs sufficiently from that considered in *Consolidated Edison* to warrant denying the government's motion for summary judgment. Mr. Funches testimony was not considered in *Consolidated Edison*. Though much of the underlying documentary evidence on which his testimony relies was before the court in that case, *see Entergy La.*, 133 Fed. Cl. at 261, an expert witness's opinion adds another dimension to the evidentiary record that the court is reluctant to discount. And, although Mr. Merrifield's comments were considered in *Consolidated Edison*, his testimony was not. *See* Def.'s Mot. at 24; *Consolidated Edison*, 676 F.3d at 1337-39. Entergy has also stated that it "will offer additional documentary evidence" not yet considered by any court. *See* Pl.'s Opp'n at 7. The government questions the relevance and probative value of the additional documentary evidence and the projected testimony, *see* Def.'s Reply at 5-9, but, under the applicable standard of review, there is enough potential probative value in the additional evidence that a reasonable factfinder could resolve the causation issue in Entergy's favor, *see Anderson*, 477 U.S. at 248. Further, Entergy's argument is not legally foreclosed under *Consolidated Edison* because no court has yet considered evidence of causation in the combination proposed here. *See Entergy La.*, 133 Fed. Cl. at 262. Drawing all reasonable inferences in Entergy's favor, this new amalgamation of evidence creates a genuine dispute whether causation can be proved. The government's motion for partial summary judgment must therefore be denied.

The government's motion may also be denied on a different ground. In *Boston Edison V*, the court initially determined that DOE's breach was a but-for cause of Entergy's claim to recover damages based on the NRC fee change. 93 Fed. Cl. at 128. On appeal, the government did not raise the issue of causation, instead arguing only that the NRC fee change decreased Entergy's overall fees. *Boston Edison VI*, 658 F.3d at 1368-69. While the parties raise the precept of law of the case in their arguments, *see* Pl.'s Opp'n at 7, 16-17; Def.'s Reply at 9-10 & n.2, the causation question appears to be a candidate for application of the related doctrine of issue preclusion.

Issue preclusion is appropriate when: "(1) an issue is identical to one decided in the first action; (2) the issue was actually litigated in the first action; (3) the resolution of the issue was essential to a final judgment in the first action; and (4) the party defending against issue preclusion had a full and fair opportunity to litigate the issue in the first action." *Shell Petroleum, Inc. v. United States*, 319 F.3d 1334, 1338 (Fed. Cir. 2003) (internal citations omitted).

Each of these factors may be met in this case. The court held in *Boston Edison V* that DOE's breach was a but-for cause of the NRC fee change; the exact issue disputed here. 93 Fed. Cl. at 128. Causation was actually litigated in *Boston Edison V* because "it was properly raised by the pleadings, was submitted for determination, and was determined." *Banner v. United States*, 238 F.3d 1348, 1354 (Fed. Cir. 2001) (internal citations omitted). Resolution of the causation issue was essential to the final judgment in Entergy's favor in the "first round" case because the damages awarded for the NRC fees could not have stood without it. *See Mother's Restaurant Inc. v. Mama's Pizza, Inc.*, 723 F.2d 1566, 1571 (Fed. Cir. 1983) ("[T]he requirement that a finding be 'necessary' to a judgment does not mean that the finding must be so crucial that, without it, the judgment could not stand."). Finally, the government had a full and fair opportunity to litigate the issue of causation in *Boston Edison V*. There were no significant

procedural limitations; the nature of the parties' relationship did not limit the litigation because Entergy and the government were adversaries, and the $1,368,787 at issue in *Boston Edison V*, 93 Fed. Cl. at 122, was a sufficient incentive for the government to fully litigate the causation issue. *Banner*, 238 F.3d at 1354.

In all events, because issue preclusion was neither explicitly raised nor briefed by the parties, the court does not rest its denial of the government's motion for summary judgment on that ground.

## CONCLUSION

For the reasons stated, Entergy's motion for partial final judgment and the government's motion for partial summary judgment on NRC fees are DENIED.  Entergy's motion for partial summary judgment on liability for the $42,019,191 of uncontested costs is GRANTED.

It is so **ORDERED**.


s/ Charles F. Lettow
Charles F. Lettow
Judge